688 A.2d 142

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. CARL WHITE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 10, 1996—Decided February 11, 1997.

Before Judges DREIER, D'ANNUNZIO and COSTELLO.

*Mark H. Friedman,* Assistant Deputy Public Defender, argued the cause for appellant (*Susan L. Reisner,* Public Defender, attorney; *Mr. Friedman,* of counsel and on the brief).

*Raymond W. Hoffman,* Assistant Prosecutor, argued the cause for respondent (*Clifford J. Minor,* Essex County Prosecutor, attorney; *Mr. Hoffman,* of counsel and on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

Tried to a jury under Essex County Indictment No. 2352–6–93, defendant was convicted of three counts of first degree robbery, one count of endangering the welfare of a child, and one count of possession of a weapon for an unlawful purpose. The jury acquit-

ted defendant of possession of a handgun without a permit. The court sentenced defendant to fifteen years' imprisonment with five years of parole ineligibility on the first robbery count. The other two robbery counts and the possession of a weapon for an unlawful purpose were merged into the first robbery count. Regarding the endangering the welfare of a child, the court sentenced defendant to four years imprisonment to be served consecutively to the sentence imposed on the first robbery count. Thus, defendant's aggregate term is nineteen years imprisonment with five years of parole ineligibility.

Defendant appeals and makes the following contentions:

POINT I

DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL JUDGE ALLOWED THE PROSECUTOR TO CROSS–EXAMINE DEFENDANT AND THEN COMMENT IN SUMMATION ON IRRELEVANT AND PREJUDICIAL INFORMATION CONCERNING DEFENDANT'S LACK OF EMPLOYMENT AND THE NUMBER OF GIRLFRIENDS HE HAD ON THE DATE THAT THE ROBBERIES WERE COMMITTED.

POINT II

THE TRIAL JUDGE ERRED BY REFUSING TO SANITIZE DEFENDANT'S PRIOR CONVICTION FOR RECEIVING STOLEN PROPERTY THAT WAS USED TO IMPEACH HIS CREDIBILITY WHEN HE TOOK THE STAND.

POINT III

SINCE THE STATE DID NOT PROVE BEYOND A REASONABLE DOUBT THAT [A.J.] WAS THE VICTIM OF A THEFT, THE CONVICTION ON COUNT THREE OF THE INDICTMENT MUST BE VACATED (Not raised below.)

POINT IV

DEFENDANT'S CONVICTION AND SENTENCE FOR ENDANGERING THE WELFARE OF A CHILD (COUNT FOUR) MUST BE MERGED INTO HIS CONVICTION AND SENTENCE FOR ARMED ROBBERY (COUNT ONE). IN THE ALTERNATIVE, DEFENDANT'S CONSECUTIVE SENTENCE ON COUNT FOUR MUST BE VACATED AND A CONCURRENT SENTENCE IMPOSED. (Partially raised below.)

POINT V

DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE.

We conclude that defendant's second contention has merit and, therefore, we reverse the convictions and remand for a new trial.

On December 18, 1992, at approximately 2:00 p.m., Daneka Claiborne, her cousin, Tasheila Ward, and a five-year-old girl, were walking down 14th Avenue in Newark between 14th and 15th Streets. A grey Pontiac containing three black males and one white male stopped across the street and slightly in front of them. Claiborne and Ward claimed that they made eye contact with and recognized the black male in the passenger seat as someone they knew as "Smalls." They identified defendant in court as "Smalls." After defendant saw them, he allegedly passed a handgun to the driver of the car, a "tall dark skinned skinny guy" later identified as Daniel Magnum.

After receiving the gun, Magnum walked over to the three girls and demanded that they give him their jewelry. When they refused, he pointed the gun at A.J.'s head and threatened to shoot her if they did not comply. Claiborne and Ward then handed their jewelry to Magnum. Magnum then proceeded to the car and entered the back seat, which was driven from the scene by the white male who had taken the driver's position. Defendant, "Smalls," was sitting stooped down in the passenger seat during the robbery.

Claiborne and Ward were interviewed by Officer Michael Krayanski after the robbery and by Detective Frank Huff three days later. Claiborne told them that one of the robbers was "Smalls" and later was able to tell Detective Huff where she thought "Smalls" lived.

Huff learned that defendant's nickname was "Smalls" after Magnum was arrested and identified by Claiborne as the robber. On April 7, 1993, Huff showed Claiborne a six photograph array which included defendant's picture. Claiborne identified defendant as "someone else in the car" and signed the picture. Defendant was arrested two weeks later. Claiborne and Ward both identified defendant in court as the person who passed the gun.

Defendant, who admitted that he was known in the neighborhood as "Smalls," took the stand on his own behalf and denied having had anything to do with the robbery of the three girls. He

testified that on the date and time in question he had stopped at a store on 14th Avenue and 16th Street while walking from his girlfriend's house on 19th Street. While in the store, Daniel Magnum and a Puerto Rican male named "Frank" offered to drive defendant to Newton Street, where his other girlfriend lived. As he was entering the car, he saw three girls on the corner of 15th Street and waved to one of them after he thought he heard her say "hey, Smalls." He admitted knowing Daneka Claiborne "from the street" but did not know if she was one of the three girls on the corner. He testified that Claiborne was once his girlfriend in 1990, but that they broke up when Claiborne discovered that he had impregnated one of her friends. After he got in the car, he was driven directly to Newton Street.

Prior to trial, the prosecutor informed the court that defendant previously had been convicted of third degree receiving stolen property. *N.J.S.A.* 2C:20–7a. The court ruled that the conviction would be admissible under *State v. Sands*, 76 *N.J.* 127, 386 *A.*2d 378 (1978), and *N.J.S.A.* 2A:81–12 to impeach defendant if he testified. The court rejected defense counsel's contention that the conviction, if admitted into evidence, would have to be sanitized as required in *State v. Brunson*, 132 *N.J.* 377, 625 *A.*2d 1085 (1993). When defendant testified, the jury was informed that defendant previously had been convicted of receiving stolen property.

In *Brunson*, the Court refined its ruling in *State v. Sands, supra. Brunson* recognized that the introduction into evidence of defendant's prior conviction of a crime similar to a crime for which defendant is being tried "is doubtless highly prejudicial, and that prejudice is unlikely to be cured by a limiting instruction." 132 *N.J.* at 391, 625 *A.*2d 1085.

To minimize the prejudice, but effect the legislative policy behind *N.J.S.A.* 2A:81–12, the Court in *Brunson* announced this compromise:

[I]n those cases in which a testifying defendant previously has been convicted of a crime *that is the same or similar to the offense charged,* the State may introduce evidence of the defendant's prior conviction limited to the degree of the crime and the date of the offense but excluding any evidence of the specific crime of which the

defendant was convicted. That method of impeachment will insure that a prior offender does not appear to the jury as a citizen of unassailable veracity and simultaneously will protect a defendant against the risk of impermissible use by the jury of prior-conviction evidence.

[*Id.* at 391, 625 A.2d 1085 (emphasis added).]

*See State v. L.J.P.,* 270 *N.J.Super.* 429, 443, 637 *A.*2d 532 (App. Div.1994) (stating that in post-*Brunson* retrial for sexual assault, defendant's prior sexual assault convictions had to be sanitized); *State v. Williams,* 267 *N.J.Super.* 514, 515, 631 *A.*2d 1285 (Law Div.1993) (noting that prior convictions of unlawful possession of handgun had to be sanitized at trial of same charge).

■ In the present case, we are persuaded that defendant's prior conviction for receiving stolen property should have been sanitized because it was sufficiently similar to the robbery charges for which defendant was being tried.

■ Robbery is the use of force or the threat of force in the course of committing a theft. *N.J.S.A.* 2C:15–1a. It is a first degree crime if the perpetrator "is armed with, or uses or threatens the immediate use of a deadly weapon" in the course of committing a theft. *N.J.S.A.* 2C:15–1b. Theft, therefore, is an element of robbery. *See State v. Sewell,* 127 *N.J.* 133, 138, 603 *A.*2d 21 (1992). Robbery can be characterized as an aggravated form of theft. *See State v. Battle,* 209 *N.J.Super.* 255, 260, 507 *A.*2d 297 (App.Div.) (characterizing robbery as "a theft attended by a simple assault"), *certif. denied,* 105 *N.J.* 560, 523 *A.*2d 194 (1986); *see also, State v. Sewell,* 242 *N.J.Super.* 499, 503, 577 *A.*2d 537 (App.Div.1990), *aff'd,* 127 *N.J.* 133, 603 *A.*2d 21 (1992).

In the present case, defendant conceded his presence in the neighborhood where the crime was committed, being in the company of Magnum, and seeing at least one of the victims. The jury had to determine whether defendant's presence was innocent coincidence or indicated criminal participation, as the victims had testified. Because theft is an element of robbery, informing the jury that defendant previously had been convicted of a theft

offense [1] had the capacity to infect the jury's deliberations with prejudice beyond the probative value of a prior conviction regarding the credibility issue. We conclude, therefore, that this case presents an example of what *Brunson* described as a similar crime. Accordingly, the convictions must be reversed and the case remanded for a new trial.

In light of our determination regarding the sanitization issue we need not address defendant's other contentions. We observe, however, regarding defendant's first contention, that the prosecutor's cross-examination of defendant about his employment status and defendant's numerous girlfriends was excessive and had the potential of prejudicing defendant's right to a fair trial. On retrial, the trial court shall exercise appropriate control of the prosecutor's cross-examination regarding those matters.

Reversed and remanded for further proceedings.

---

[1] *N.J.S.A.* 2C:20–7a defines the offense of receiving stolen property as a theft. It provides:

A person is guilty of theft if he knowingly receives or brings into this State movable property of another knowing that it has been stolen, or believing that it is probably stolen.