706 A.2d 213

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JAMES SINGLETON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 22, 1998—Decided February 19, 1998.

Before Judges SHEBELL, D'ANNUNZIO and COBURN.

*Ivelisse Torres*, Public Defender, attorney for appellant (*William B. Smith*, Assistant Deputy Public Defender, of counsel and on the brief).

*Peter Verniero*, Attorney General, attorney for respondent (*John F. O'Hern*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

Tried to a jury, the defendant was acquitted on two counts of third-degree terroristic threats, *N.J.S.A.* 2C:12–3b (counts one and three) and convicted on two counts of fourth-degree criminal contempt, *N.J.S.A.* 2C:29–9b (counts two and four). The offenses charged in counts one and two were alleged to have occurred at the same time on March 22, 1993; and the offenses charged in counts three and four were alleged to have occurred at the same time on June 13, 1993. The defendant and the victim were married but separated, and all of the charges arose from the defendant's alleged violation of a final restraining order issued pursuant to the Prevention of Domestic Violence Act of 1990,

*N.J.S.A.* 2C:25-17 to –33 (the Act). The court sentenced the defendant to concurrent terms of probation for four years. Defendant appeals. We reverse the judgment of conviction and remand for a new trial.

The defendant, James Singleton, and the victim, Robyn Martin were married in 1988. Within three months of their marriage, Robyn obtained a final restraining order under the Act. They reconciled some time later, and in 1991 Robyn gave birth to their child. However, the relationship deteriorated, they separated on January 2, 1992, and on March 2, 1992, Robyn obtained and served upon the defendant another final restraining order issued pursuant to the Act. The order prohibited the defendant from going to Robyn's home on Waverly Place, Elizabeth, and from having contact with or making harassing communications to her.

On March 22, 1993, defendant placed "a few" telephone calls to Robyn at her place of employment. He told her to "drop the child support" and he threatened to kill her. Robyn described his voice as "extremely angry," "[v]ery bitter," and "very desperate." The telephone calls lasted for approximately five minutes, during which time she repeatedly hung up on defendant and he called "right back."

On June 13, 1993, the defendant appeared at Robyn's home on Waverly Place. He rang the doorbell. She refused to open the door because she was afraid. The defendant was yelling and was acting "[v]ery angry, crazy." Looking through the peephole of her front door, Robyn could see that the defendant was carrying a handgun in his left hand. He said he knew she was in there, and he wanted her to come outside so he could "just get things over with to end things." He threatened to kill her. Finally, after about ten minutes, he left. Robyn immediately called her mother, Lucille Martin, and told her what had just happened.

Apart from the evidence respecting the service on defendant or the final restraining order, the State's case was based solely on the testimony of Robyn Martin. The only other witness was Robyn's mother Lucille Martin. The defendant called her to

establish that, contrary to Robyn's testimony, Robyn had failed to mention to her mother during the telephone conversation of June 13 that the defendant was armed.

After Lucille Martin testified, the defendant, who was appearing *pro se,* announced in front of the jury, as he had previously indicated in his opening statement, that he would testify. At that point, the prosecutor asked for a sidebar conference during which she advised the trial court and the defendant that if the defendant testified the State wanted to introduce indictable convictions as bearing on defendant's credibility. On October 19, 1984, the defendant was sentenced in the State of New York to concurrent terms of three to nine years of imprisonment on two counts of second-degree robbery. On March 31, 1989, the defendant was sentenced in New Jersey to probation for third-degree unlawful possession of a firearm in violation of *N.J.S.A.* 2C:39–5. The judgment does not indicate which subsection of this statute was violated other than by reference to the degree of the crime. The defendant objected to the admission of the robbery convictions as too remote. The trial court rejected that position in light of the more recent conviction. The court then determined, *sua sponte,* that it would "sanitize" the possession of a firearm conviction but not the robbery convictions. The court said:

> I'll not allow the State to refer to the fact that it was a conviction for unlawful possession of a weapon, lest the jury think because you were convicted of it in [19]89, you may have had a gun in your possession in [19]93. So, I'll not allow that, but they will be allowed to ask you if you were convicted of a third-degree crime and [bring out the] sentence you received as to that, and the robbery conviction they would be allowed to go into anything about that. . . . * * * So, I'll permit it. If you get on the stand they will be allowed to bring it [the robbery judgment] up.

The defendant responded by asking, "To what extent?" The Court replied, "To the extent of on the robbery conviction what it was for, what the sentence was." As a result of these rulings, the defendant decided not to testify.

The defendant contends that he was severely prejudiced by the court's decision to sanitize only one of his prior convictions. The State concedes that the court erred in this respect. We agree.

The decision unquestionably violated the law as set down in *State v. Brunson*, 132 *N.J.* 377, 625 *A.*2d 1085 (1993):

> To impeach the credibility of a testifying defendant, the State may introduce into evidence only the number, degree, and date of the defendant's prior similar convictions. When a defendant has multiple prior convictions, some of which are similar to the charged offense and some of which are dissimilar, the State may introduce evidence only of the date and degree of crime of all of the defendant's prior convictions, but cannot specify the nature of the offenses. Alternatively, the State may introduce without limitation evidence of only the dissimilar convictions.
>
> [*Id.* at 394, 625 *A.*2d 1085.]

Earlier in the opinion, the Court explained why a sanitization of one prior conviction would require sanitization of all prior convictions when both similar and dissimilar crimes were involved:

> We note that only two of defendant's three prior convictions are similar to the offenses presently charged. If on retrial the State should choose to introduce all three prior convictions for impeachment purposes, the trial court should sanitize all three convictions *to avoid the speculation that inevitably would occur if evidence were introduced to prove the theft conviction and the convictions of the unidentified crimes.*
>
> [*Id.* at 393, 625 *A.*2d 1085 (emphasis added).]

Although the State concedes the trial court violated *Brunson* by sanitizing only one conviction, it contends the error did not prejudice the defendant's right to a fair trial for two related reasons: (1) the trial court erred in sanitizing the weapons offense, and (2) the defendant could have avoided any prejudice produced by the sanitization by testifying as to the nature of the weapons offense. We reject this argument because we are satisfied that the trial court correctly recognized the need for sanitization.

The State claims sanitization was not required because the weapons offense was not similar to the offenses for which defendant was being tried. In this regard, it relies upon *State v. White*, 297 *N.J.Super.* 376, 688 *A.*2d 142 (App.Div.), *certif. denied*, 149 *N.J.* 407, 694 *A.*2d 193 (1997), for the proposition that offenses are not of a similar nature unless they have elements in common other than state of mind. In *White* the question arose whether in a robbery trial a prior conviction for theft should have been sanitized. We said:

Because theft is an element of robbery, informing the jury that defendant previously had been convicted of a theft offense had the capacity to infect the jury's deliberations with prejudice beyond the probative value of a prior conviction regarding the credibility issue. We conclude, therefore, that this case presents an example of what *Brunson* described as a similar crime. Accordingly, the convictions must be reversed....

[*Id.* at 381–82, 688 *A.*2d 142 (footnote omitted).]

*White* does not stand for the proposition suggested by the State that only if the crimes have common elements can they be said to be similar. Rather, it merely holds that a sharing of common elements is "an example" of similar crimes. *Brunson* itself does not define the concept of similarity for these purposes. However, the Court did indicate that the purpose of sanitizing similar offenses was to "protect a defendant against the risk of impermissible use by the jury of prior-conviction evidence." 132 *N.J.* at 391, 625 *A.*2d 1085. As the trial court recognized in this case, there was a substantial danger that defendant's prior firearms offense would buttress the victim's testimony in the minds of the jurors respecting his use of a handgun to harass her in violation of the existing court order. We agree with that determination. In other words, in the context of this case, where the nature of the prior crime is such that it includes criminal responsibility for an act (here unlawful possession of a firearm) which is present in some form in the crimes for which the defendant is being tried (violation of a court order by harassment involving, among other things, possession of a firearm in a threatening manner, and the making of terroristic threats while so armed), a trial court is well within the exercise of sound discretion in deciding that sanitization is appropriate.

Since the trial court properly sanitized the firearms offense, it was required, as we have noted, to sanitize the robbery conviction. Having failed to properly apply the teaching of *Brunson*, the trial court prejudiced the defendant's right to a fair trial. Had the defendant testified, the jury would have been left to speculate that the reason for the sanitization of one prior conviction, and not the other, was that the sanitized prior conviction involved similar criminal conduct. That is precisely the kind of

inevitable speculation which the Court intended to avoid by its decision in *Brunson.* 132 *N.J.* at 393, 625 *A.*2d 1085.

■ The State also contends that the issue was not raised below and should not be recognized by us as plain error. *R.* 2:10–2. In the context of this case, we disagree. The defendant, appearing *pro se,* had made known to the jury on two occasions, first in his opening and then after he called his first witness, that he intended to testify. The State did not indicate its desire to use the prior convictions on the issue of credibility until the second occasion. Thus, the defendant defended himself during the State's case on the assumption that he would later take the stand to deny the allegations contained in the indictment. Furthermore, when the trial court indicated that the robbery conviction would come before the jury, the defendant asked, "To what extent?" We are inclined to the view that the trial court should have treated that question, coming as it did from a *pro se* defendant, as an objection based on *Brunson.*

In any case, the trial court's improper ruling clearly dissuaded the defendant from testifying. In *State v. Whitehead,* 104 *N.J.* 353, 517 *A.*2d 373 (1986), the Court rejected the view of the United States Supreme Court that a defendant who had not testified could not complain on appeal of an erroneous ruling respecting the admission of prior convictions on credibility. *Id.* at 360–62, 517 *A.*2d 373. The Court also made this pertinent observation:

> We acknowledge that an appellate court would be better informed to review the impact of impeachment on the basis of prior convictions if the defendant testified at trial. Moreover, we are aware of the difficulty of characterizing as harmless a trial court's error in ruling that the defendant's prior convictions may be used for impeachment purposes. In this regard, the United States Supreme Court has stated that almost any error would result in automatic reversal because "the appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying."
>
> [*Id.* at 359, 517 *A.*2d 373 (citations omitted).]

In this case, the full nature of the defendant's potential testimony is unclear. However, in his opening and closing remarks he did not concede any element of the offenses. Furthermore, he produced the testimony of the victim's mother to cast doubt on the

victim's claim that he was armed with a handgun during the June 13 incident. We may safely assume that his testimony would, at the least, have buttressed his case on that point. The evidence against him, apart from that bearing on the existence of the court order and its service upon him, came essentially from one witness, the victim. No gun was recovered. Thus, the State's case was not particularly strong. In these circumstances, we are satisfied of the existence of plain error since there was "a possibility of injustice—a possibility that is 'real' in the sense that it raises 'a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" *State v. Miscavage,* 62 *N.J.* 294, 301, 301 *A.*2d 136 (1973) (quoting *State v. Macon,* 57 *N.J.* 325, 337, 273 *A.*2d 1 (1971)).

Reversed and remanded.[1]

---

[1] The defendant contends that due to errors in the courts below, he did not validly waive his right to the assistance of counsel. He also contends the trial court erred in denying his request during trial for appointment of a paralegal and an investigator. In the context of this case, these arguments are without merit and do not warrant discussion in a written opinion. *R.* 2:11–3(e)(2). The defendant also contends, and the State properly concedes, that the trial court erred in its charge to the jury with respect to the fourth-degree contempt charges. The error was the failure to instruct on one of the elements of the offense, namely, that the conduct which constituted contempt of the court order was itself either a crime or a disorderly persons offense. *See N.J.S.A.* 2C:29–9b. The State asks that we order the judgment of conviction modified to reflect the lesser included disorderly persons convictions under *N.J.S.A.* 2C:29–9b. While we have that authority, *see State v. Carlos,* 187 *N.J.Super.* 406, 417, 455 *A.*2d 89 (App.Div.1982), we cannot exercise it here since the defendant is entitled to a reversal based on the *Brunson* error. On the other hand, we do not foreclose the right of the defendant to waive the *Brunson* error and accept a modified judgment of conviction to the lesser disorderly persons offenses. Should he make that election, he will have to be resentenced.