NEW HOPE BOOKS, INC., and
705 Crescent Corporation,
Plaintiffs,

v.

John J. FARMER, Jr. (as Attorney
General of the State of New
Jersey), Defendant.

No. CIV. 98–3937 JBS.

United States District Court,
D. New Jersey.

Jan. 13, 2000.

Joseph A. Diorio, Philadelphia, PA, for plaintiffs.

John J. Farmer Jr., Attorney General of New Jersey by Larry Etzweiler, Trenton, NJ, for defendant.

## OPINION

SIMANDLE, District Judge.

This motion addresses the important issue of whether it is appropriate for this federal court to subject a state criminal statute to pre-enforcement review upon the ground that the statute's existence is alleged to have a tendency to chill the plaintiffs' exercise of First Amendment rights in connection with the operation of their adult entertainment business. In this case, plaintiffs, New Hope Books, Inc. ("New Hope") and 705 Crescent Corporation ("705 Crescent"), an adult entertainment store and its landlord, respectively, challenge the constitutionality of various New Jersey statutes which regulate the adult entertainment business. Plaintiffs were charged with violating N.J.S.A. 2C:34–1, which prohibits engaging in prostitution, promoting prostitution, and com-

pelling others to engage in prostitution, and N.J.S.A. 2C:33–12, which prohibits knowingly maintaining a house of prostitution or a premises where obscene material, as defined in N.J.S.A. 2C:34–2, is exhibited. Pursuant to a plea bargain between the county prosecutors and New Hope and 705 Crescent, all state indictments have been dismissed. Nonetheless, before this Court is plaintiffs' six-count Second Amended Complaint, in which they seek declaratory relief holding unconstitutional the above statutes, as well as N.J.S.A. 2C:33–12.1(b), which allows a court to shut down a nuisance as defined above for one year, and N.J.S.A. 2C:33–12.2(b), which includes in the definition of a nuisance a sexually oriented business which offers enclosures that facilitate sexual activity by patrons.

Defendant, John J. Farmer, Jr., Attorney General of New Jersey, sought judgment on the pleadings as to plaintiffs' challenge to N.J.S.A. 2C:33–12, 2C:33–12.1(b), 2C:34–1, and 2C:34–2, arguing that this Court should abstain under the abstention doctrine from *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Defendant additionally filed a motion for dismissal of the complaint, or for a partial stay and partial dismissal, on the counts for which he does not seek a *Younger* abstention. In a December 22, 1999 Opinion and Order, this Court denied the motion for judgment on the pleadings. Additionally, the Court dismissed Count Six of the Second Amended Complaint by agreement of the parties. As this Court explained, the following remained to be decided: whether plaintiffs have standing to raise a preenforcement challenge to the constitutionality of N.J.S.A. 2C:33–12.2(b), whether the Court should exercise *Pullman* abstention, and whether, if the plain-

tiffs have standing and this Court chooses not to abstain, N.J.S.A. 2C:33–12.2(b) is unconstitutionally vague on its face.[1] This Court promised that a forthcoming Opinion would take up these issues and scheduled oral argument for January 28, 2000 upon these issues.

As explained below, however, this Court has now reviewed the parties' papers on the motion to dismiss or for a partial stay and partial dismissal and has determined that plaintiffs' challenge of N.J.S.A. 2C:33–12.2(b) is not ripe. Accordingly, defendant's motion to dismiss will be granted, and those aspects of Counts One through Five which are based on N.J.S.A. 2C:33–12.2(b) will be dismissed.

## I. BACKGROUND

The facts of this case are set out in detail in this Court's December 22, 1999 Opinion, and they need not be repeated here. What follows is a description of only those facts relevant to the ripeness of the challenge to N.J.S.A. 2C:33–12.2(b). These facts are uncontested.

Following a February 6, 1997 raid of the subject premises, on May 5, 1997, the Camden County Prosecutor's Office instituted civil forfeiture proceedings in the Superior Court of New Jersey against certain funds seized during the raid. On May 15, 1997, Lee A. Solomon, the Acting Camden County Prosecutor, sent a letter to "ALL POLICE CHIEFS" in which he explained that an injunction against the enforcement of N.J.S.A. 2C:33–12.2(b) had been issued in August of 1995, but that "[i]n February, 1997, the New Jersey Superior Court, Appellate Division vacated the injunction and declared that N.J.S.A. 2C:33–12.2 is constitutional. Be advised that the statute may now be enforced." (Pls.' Br. Ex. B.) The decision to which the

---

1. In footnote 13 of the December 22, 1999 Opinion, this Court accidentally wrote that one of the questions remaining to be decided was whether, if there was standing and a *Pullman* abstention was not granted, N.J.S.A. 2C:33–12.1(b) was unconstitutional. That was a typographical error; the proper refer-

ence should have been to 33–12.2(b). N.J.S.A. 2C:33–12.1(b) is simply the mechanism through which a court could order 705 Crescent to shut its doors for up to one year if 705 Crescent was found guilty of maintaining a nuisance under 2C:33–12.2(b) or any other statutory provision.

letter referred was *Chez Sez VIII v. Poritz,* 297 N.J.Super. 331, 688 A.2d 119 (App. Div.), *cert. denied,* 149 N.J. 409, 694 A.2d 194 (1997), which was issued on February 7, 1997, one day after the raid. The remainder of the letter went on to explain, in layman's terms, the Appellate Division's interpretation of the statute, which was that

> sexual activity is facilitated when "booths" or other places in a sexually oriented business are so constructed as to "preclude visibility" from public areas of the business. It appears that it is the Court's opinion that "sexual activity" is more likely to occur, and therefore "facilitated", where a booth has an opaque screen or a door which affords privacy or anonymity to the booth's occupant. It further appears, then, that sexually oriented businesses with booths so equipped are in violation of the statute.

(Pls.' Br. Ex. B.)

Months later, on December 17, 1997, the Camden County grand jury indicted plaintiffs under N.J.S.A. 2C:34–1 and 2C:33–12. Plaintiffs were not charged with violating N.J.S.A. 2C:33–12.2(b).

On April 21, 1998, Brian E. Mulholland, Assistant Prosecutor of Camden County, sent a letter to all owners/operators of sexually oriented businesses which said the following;

> New Jersey Statute 2C:33–12.2, a copy of which is enclosed, makes it a nuisance as well as a crime of the fourth degree to own or operate a "sexually oriented business" which offers for public use booths, screens, enclosures or other devices which facilitate sexual activity by patrons. The term "sexually oriented business" is defined in the statute.
>
> In *Chez Sez VIII, Inc., et al. v. New Jersey,* A1729–95T3, a New Jersey appeals court found that N.J.S. 2C:33–12.2 is not violative of the United States Constitution and also provided guidance in interpreting the statute. According to the appellate court, sexual activity is "facilitated" when booths or other places in a sexually oriented business are so positioned or constructed as to "preclude visibility" from public areas of the business.
>
> N.J.S. 2C:33–12.1, a copy of which is also enclosed, provides that a building whose owner has been convicted of maintaining a nuisance may be closed by the Court for a period not to exceed one year. The purpose of this letter is to formally notify you that a "sexually oriented business" may be operating on premises owned by you, and to give you an opportunity to bring that business into compliance with the law.

(Pls.' Br. Ex. A.)

In response to this letter, plaintiff New Hope Books altered the doors to its viewing booths such that the bottom one-third of the door was eliminated and the opening to the booth was visible to the adjacent public hallway. Counsel to New Hope Books, Donald Feeley, Esquire, wrote to the Police Chief asking for a standard regarding enforcement of N.J.S.A. 2C:33–12.2 and whether his clients' alterations to the doors were in accordance with the law. (Pls.' Br. Ex. C.) He received no response.

Plaintiffs have not been charged with violating N.J.S.A. 2C:33–12.2(b) at any time, including after the police saw and raided the premises thirty-five months ago, or after the police became aware, through Mr. Feeley's letter, that the booths looked essentially the same but now had the bottom ⅓ of the doors removed. Additionally, plaintiffs have not provided evidence that any other sexually oriented business has been charged under the statute.

## II. DISCUSSION

### A. Standards for Motion to Dismiss for Lack of Subject-Matter Jurisdiction

■ Defendant here seeks to have this Court dismiss plaintiffs' challenge to

N.J.S.A. for lack of standing or ripeness. Such a challenge is one to this Court's subject-matter jurisdiction and is brought under Fed.R.Civ.P. 12(b)(1). When such a motion is brought, the court must accept as true all material allegations of the complaint and construe that complaint in favor of the nonmoving party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The court's focus is not upon the factual allegations insofar as they would entitle plaintiffs to relief, but rather upon whether this Court has jurisdiction to hear the claim and grant that relief. Toward that end, the Court can consider affidavits attached to the moving papers or even require such affidavits to be submitted, *id.,* and based on those the Court can find facts. *Growth Horizons, Inc. v. Delaware County, Pennsylvania,* 983 F.2d 1277, 1281 n. 4 (3d Cir.1993). "If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Warth,* 422 U.S. at 501–02, 95 S.Ct. 2197.

### B. *Case or Controversy Requirement*

■ Though defendant argues that plaintiffs lack standing to challenge N.J.S.A. 2C:33–12.2(b), defendant's true argument is that there is no actual "case or controversy" between the parties and that a pre-enforcement challenge to the statute, under these circumstances, is not ripe. Because of the mandates of Article III of the United States Constitution and the terms of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court must determine whether plaintiff has presented an "actual controversy." As part of the "case or controversy" requirement, parties seeking to challenge a statute must first "suffer injury or come into immediate danger of suffering an injury," *Artway v. Attorney General of the State of New Jersey,* 81 F.3d 1235, 1246 (3d Cir. 1996), such that district courts avoid "pre-

mature adjudication, ... entangling themselves in abstract disagreements," and thus refrain "from interfering with legislative enactments until it is necessary to do so...." *Id.* at 1247.

■ As explained by the Third Circuit in *Artway,* two factors must be weighed in determining if a case is ripe: first, the hardship to the parties if court consideration is withheld, and, second, the fitness of the issues for judicial review. *Id.*[2] The hardship factor is not met, and a challenge to a criminal statute is not ripe, where there has been no prosecution under that statute or where alleged threats of prosecution can be characterized only as "imaginary or speculative." *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (citing *Younger,* 401 U.S. at 42, 91 S.Ct. 746); *Artway,* 81 F.3d at 1247.

Under certain circumstances, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel,* 415 U.S. at 459, 94 S.Ct. 1209. "If the injury is certainly impending, that is enough." *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (citing Commonwealth of *Pennsylvania v. State of West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117 (1923)). However, whether a pre-enforcement challenge is ripe must be determined on a case-by-case basis, for it is highly dependent upon the facts of the particular case.

For example, in *Steffel,* the petitioner and other persons had been told by police officers that they would be arrested if they continued to distribute handbills in a mall protesting American involvement in Vietnam. 415 U.S. at 455, 94 S.Ct. 1209. The group left the mall but returned two days later and again began to distribute handbills. *Id.* The manager of the mall called

---

**2.** The Third Circuit explained that it sometimes uses a three-part test in the declaratory judgment context but that the two-part test is equally applicable.

the police, who once again told petitioner and his companion that they would be arrested if they continued. *Id.* Petitioner left, but his friend remained and was subsequently arrested and charged under the criminal trespass statute. *Id.* at 455–56, 94 S.Ct. 1209. Petitioner sued, challenging the criminal trespass statute under the First Amendment. The parties agreed that if petitioner returned to the mall and began again to hand out handbills, as he had expressed a desire to do, he would be arrested. *Id.* at 456, 94 S.Ct. 1209. The Supreme Court found that, under those circumstances, petitioner's preenforcement challenge to the criminal trespass statute was ripe.[3] *Id.* at 459, 94 S.Ct. 1209.

In *Artway,* the Third Circuit found that a plaintiff's preenforcement challenge to the registration requirement of New Jersey's sex offender statute, Megan's Law, was ripe. 81 F.3d 1235. The plaintiff in that case had been convicted as a sex offender in New Jersey, served his sentence, moved out of New Jersey, settled down, and began a new life; he also wished to move back to New Jersey, which required that convicted sex offenders who move to New Jersey register with the local police. *Id.* The plaintiff challenged that requirement.[4] At oral argument, the Attorney General agreed that she would definitely prosecute the plaintiff if he moved to New Jersey and failed to register. *Id.* at 1248. Based on this very "credible, real, and substantial" threat of prosecution, the Third Circuit found that the challenge was ripe. *Id.*

Finally, in *Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio,* 40 F.3d 1454 (3d Cir.1994), several churches and a pastor challenged amendments to the New Jersey Law Against Discrimination which added "affectional or sexual orientation" to the list of impermissible distinctions, arguing that it violated the First Amendment freedom of speech. *Id.* The responsible state official averred in an affidavit that the state would not enforce the NJLAD against the churches or against the individual as church pastor. *Id.* at 1458. The Third Circuit agreed with the district court that the challenge by the churches was not ripe, but found that the controversy was ripe as to the individual plaintiff because he also alleged that "the statute threatens his right as an individual citizen to speak out against male and female homosexual acts and the state has expressly refused to offer any assurance it will not prosecute [him] if he does so outside of the church." *Id.* In their complaint, the plaintiffs expressly admitted that they always had, and then-presently did (even in the face of the amendments to the NJLAD), discriminate against people based on their sexual preference because of their religious beliefs. *Id.* at 1460. The state was pointedly asked at oral argument if its offer of immunity from the provisions extended to the pastor as an individual, and specifically said that it would not guarantee that because he was an individual. *Id.* at 1467. Based on what the Third Circuit described as "[t]he pointed nature of that refusal," the Court held that the threat of prosecution was "real and substantial." *Id.* at 1468.

■ However, the facts of all three of these cases are distinguishable from the facts of the case at bar. Unlike in *Steffel* and *Artway,* no one in the instant case told plaintiffs that they would actually be arrested if they continued to operate their business either as it existed or as it stood after the bottom third of the doors was cut

3. Because of the then-recent developments in United States foreign policy toward Vietnam, the Court found that there was a question as to whether the dispute was moot. That decision, however, takes nothing away from the ripeness aspect of the opinion.

4. The plaintiff also challenged the community notification provisions of Megan's Law. The Third Circuit found that aspect of the challenge unripe because notification involves a contingency; the plaintiff might not have to face notification and thus there was no hardship from denying review at that point. *Id.* at 1248.

off. All that occurred was that the Camden County Prosecutor sent a letter to police chiefs and to sexually oriented businesses letting them know the change in status of the law. There was no implication that plaintiffs were not in compliance with the law, only fair notice to them of what the law requires (as delineated in *Chez Sez* ).[5] Plaintiffs would argue that the local police's failure to answer their question as to whether eliminating the bottom third of the door satisfies the requirements of N.J.S.A. 2C:33–12.2(b) makes this case akin to *Presbytery*. However, in *Presbytery*, the Third Circuit relied not upon a failure to answer a question about whether certain actions violated the NJLAD, but rather upon a "pointed refusal" to waive the right to prosecute individuals for actions which no one disputed violated that statute.

Additionally, in all three of the above cases, *Steffel,Artway*, and *Presbytery*, it was quite clear that if the plaintiffs took the actions that they sought to take (distributing handbills, moving to New Jersey without registering, encouraging the church to not hire someone because of sexual orientation), that such actions would constitute violations of the challenged statutes. In the instant case, to the contrary, it is quite possible (based on the Appellate Division's statement in *Chez Sez* that "enclosures meeting other jurisdictions' physical requirements would be permissible under the State's statute," [6] 297 N.J.Super. at 349, 688 A.2d 119) that plaintiffs' newly-structured booths (which are also monitored by store personnel through video cameras) would satisfy the requirements of N.J.S.A. 2C:33–12.2(b).

The concern in a case such as the instant case, where plaintiffs are seeking declaratory judgment that a statute violates the First Amendment, is that the threat of prosecution chills the plaintiffs' speech:

> The ripeness inquiry to pre-enforcement challenges in First Amendment cases usually focuses on how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute in order to ensure that the fear of prosecution is genuine and the alleged chill on First Amendment rights is concrete and credible, and not merely imaginative or speculative.

*National Rifle Association of America v. Magaw*, 132 F.3d 272, 285 (6th Cir.1997) (pre-enforcement challenge of law on First Amendment grounds possible because the "harm alleged in First Amendment cases is the 'chilling effect' on the constitutionally protected right to free expression") (citing *Steffel*, 415 U.S. at 459, 94 S.Ct. 1209, and *Babbitt*, 442 U.S. at 301–03, 99 S.Ct. 2301). Here, N.J.S.A. 2C:33–12.2(b) has apparently not chilled plaintiffs' speech, namely their continuance of selling sexually oriented books and videos and presenting sexually oriented dancing. Though plaintiffs responded to the statute by changing the structure of the doors to the viewing booths, there is no hint that they did not continue to operate their business after the time for which they agreed to close the store (through the state-court plea agreement) had passed.

Plaintiffs argue that prosecution cannot be ruled out because plaintiffs' counsel sent a letter to the police asking if it was enough that the bottom third of the doors to the booths have been removed but received no answer. True, prosecution cannot be ruled out, but the threat of prosecution is only speculative. Here, the state of New Jersey has known about plaintiffs' set

---

5. Nor have plaintiffs presented this Court with evidence that the statute has actually been enforced against anyone else.

6. The Appellate Division said that N.J.S.A. 2C:33–12.2(b) "embraces all the physical requirements of other jurisdictions," including

booths that are open on one side to a public room, in which the doors have been removed, or which are visible from a continuous aisle, so long as it is visible "to visitors, customers and store personnel." 297 N.J.Super. at 349, 688 A.2d 119.

up for a long time, both because of the raid and because plaintiffs' counsel specifically told the police how plaintiffs' booths are now configured. Despite that, plaintiffs have not been indicted under N.J.S.A. 2C:33–12.2(b), nor has any law enforcement authority threatened plaintiffs with such charges. There is no reason, other than speculation, to believe that the state will seek to indict plaintiffs under this statute.

Courts should avoid "interfering with legislative enactments until it is necessary to do so," see *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). It is also axiomatic that courts should avoid unnecessary adjudication of constitutional issues. Here, there is no evidence of more than a speculative threat of prosecution and it does not appear that speech has been chilled. Therefore, this challenge fails the hardship prong of the ripeness test. Because there is no "actual controversy" under Article III, this Court cannot reach the constitutional challenge to N.J.S.A. 2C:33–12.2(b).

## III.  *CONCLUSION*

For the reasons stated above, this Court finds that plaintiffs' pre-enforcement challenge to N.J.S.A. 2C:33–12.2(b) is not ripe. Therefore, defendant's motion to dismiss those aspects of the Second Amended Complaint which are based on N.J.S.A. 2C:33–12.2(b) will be granted, and those claims will be dismissed from the case for lack of subject-matter jurisdiction. Remaining in this case are those aspects of Counts One through Five of the Second Amended Complaint which challenge the constitutionality of N.J.S.A. 2C:33–12, 2C33–12.1(b), 2C:34–1, and 2C:34–2, none of which are the subject of any currently pending motions. The accompanying Order is entered.

### ORDER

This matter having come before the Court upon defendant's motion to dismiss or for a partial dismissal and partial stay;

and the Court having considered the parties' submissions; and for the reasons expressed in an Opinion of today's date;

IT IS this day of January 2000 hereby

ORDERED that the aspect of defendant's motion to dismiss or for a partial dismissal and partial stay which was continued by virtue of the December 22, 1999 Order be, and hereby is, *GRANTED,* such that those aspects of Counts One through Five of the Second Amended Complaint which were based on N.J.S.A. 2C:33–12.2(b) are DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION; and it is

ORDERED that the Oral Argument scheduled for January 28, 2000 at 11:30 a.m. be, and hereby is, *CANCELED.*