M. BENJAMIN BARON, PLAINTIFF-RESPONDENT, v. PEOPLES NATIONAL BANK OF SECAUCUS, A NATIONAL BANKING ASSOCIATION, ORGANIZED UNDER THE LAWS OF THE UNITED STATES OF AMERICA, DEFENDANT-APPELLANT.

Argued March 3, 1952—Decided April 7, 1952.

250

252

*Mr. George W. King* argued the cause for the appellant.

*Mr. Joseph L. Freiman* argued the cause for the respondent.

The opinion of the court was delivered by

OLIPHANT, J.  This is an appeal from an interlocutory order entered in the Law Division of the Hudson County Court in an action in replevin.  The order denied a motion for a summary judgment under *Rule* 3:56–3.  The motion was originally made before answer and denied and was renewed at the pretrial on notice.

The grounds of the motion were:  (1) that replevin would not lie where the defendant had neither actual nor constructive possession of the property at the time of the issuance of the writ;  (2) that the plaintiff had waived his right to bring suit in replevin since he had previously consented to a dismissal without prejudice of an action in conversion based upon the same set of facts, and (3) estoppel.

An appeal was taken from this interlocutory order to the Appellate Division under *Rule* 4:2–2(*a*) (3) on the theory that the order denying the motion for summary judgment involves a question of the jurisdiction of the subject matter of the suit.  The appeal is before this court on our own motion.

For reasons that will appear hereafter we are of the opinion that this appeal does not lie under *Rule* 4:2–2(*a*) (3).  However, we deem it necessary to discuss the pleading and practice question involved.  The following facts establish the situation that is the gist of the alleged cause of action for replevin.

On May 9, 1949, the respondent borrowed the sum of $12,000 from the appellant and executed and delivered to the appellant his promissory note secured by collateral con-

sisting of stock certificates representing shares of stock in various companies. There was the usual pledgor-pledgee agreement under which the certificates representing the shares of stock were deposited with the appellant as pledgee and in all probability were endorsed in blank in view of their subsequent disposition by the pledgee. There was a decline in the market value of these stocks and on June 7, 1949, the appellant believing the margin was unsatisfactory sold the stock through a brokerage house and tendered the proceeds to the respondent after deducting the amount due on the note. It appears from the pleadings and pretrial order and the opinion of the court below that there is a sharp dispute of fact as to whether the appellant notified the respondent of its position with respect to the collateral and its intention to sell in view of the depreciation thereof.

The pledge agreement contained, *inter alia,* the following condition:

"Upon failure of the undersigned either to pay the above sum or any indebtedness to said Bank when becoming or made due, or to keep up required margin of collateral securities, then and in either event said Bank may immediately without advertisement, and without notice to the undersigned sell any of the securities held by it as against any or all of the liabilities of the undersigned, at public or private sale, or at any Broker's Board in New Jersey or the City of New York or elsewhere, and apply the proceeds of such sale as far as needed toward the payment of the above sum and towards any or all of such liabilities together with interest and expenses of sale, * * *."

The net proceeds of the sale of the securities was $14,-232.79, from which the appellant deducted the amount due on the loan and remitted the balance to the respondent. On June 10, 1949, the respondent alleges he demanded that the appellant restore the stock to him and repeated the demand on June 17, 1949, and on October 16, 1950 tendered the amount due on the note. The note was the note of May 9, 1949, in the sum of $12,000, and was due three months after date.

On August 15, 1949, the respondent instituted an action in conversion against the appellant based upon the unlawful

sale of the stock. Appellant filed an answer alleging the stock was lawfully sold after respondent had been duly notified to either reduce the loan or furnish additional collateral. It was in this cause on October 16, 1950, that the respondent made the tender of $12,000 plus interest and then gave a notice of motion to amend his complaint by including a count in replevin, which motion was denied by another judge in the County Court, and on January 16, 1951 an order was accordingly entered.

On January 29, 1951 a voluntary dismissal of the conversion suit was taken by stipulation between counsel for the respective parties under *Rule* 3:41–1(*a*) and such dismissal by the terms of this rule is without prejudice. The respondent then instituted the present action in replevin for the recovery of possession of the certificates of stock involved, alleging that the appellant had wrongfully deprived him of their use, or in the alternative for money damages for their value. It is to this complaint that the present motion was addressed.

The action was instituted by a summons and complaint under *Rule* 3:73–1 and a writ of replevin also issued. Under this rule a writ of replevin constitutes *mesne* process and not original process and it may be employed as an adjunct to any civil action. The rule does away with some of the technical distinctions heretofore inherent in an action in replevin.

*Rule* 3:8–5(*a*) provides that no technical forms of pleading are required, and *Rule* 3:8–5(*b*) provides that a party may set forth two or more statements of claim alternatively either in one count or separate counts, and *Rule* 3:8–6 provides that all pleadings shall be so construed as to do substantial justice. But the basic question raised by the appellant goes to the substantive law of the case.

The trial court held that replevin, or equitable replevin, may be maintained for a certificate of stock where the object is to regain possession of the specific paper and not to test the right to the property which it represents, and he also held that where it is wrongfully detained from the true owner or

wrongfully converted by another it may be recovered in an action of detinue or its value may be recovered by bringing an action of trover. And he held further there was a proper ground for denying the motion because in a replevin suit a plaintiff may ask either for possession of the chattels or in lieu thereof its value. Citing *Photo Developing, Inc., v. Bittner,* 133 *N. J. L.* 102 (*Sup. Ct.* 1945). On the ground of waiver he held that the two remedies were not inconsistent either in law or in fact, and relying on the case of *Moss v. Marks,* 97 *N. W.* 1031 (*Sup. Ct. Neb.* 1904), he held there was no inconsistency between the remedies of conversion and replevin.

The appellant argues that under the statute applicable, *R. S.* 2:73–1 *et seq.,* that the action in replevin must seek a return of specific property in possession of the defendant, and where such property is not in defendant's possession there is no *res* within the jurisdiction of the court. He argues that replevin ordinarily will not lie to recover property of which the defendant has lost possession or which he has disposed of, at least where such loss or disposal was in good faith, and that the defendant must be in possession of the goods and chattels at the time the suit is instituted.

In a strict sense replevin at the common law could only lie where the goods or chattels were so taken that an action of trespass *de bonis asportatis* would lie. The original taking of possession by the defendant had to be unlawful or tortious *ab initio. Woodside v. Adams,* 40 *N. J. L.* 417 (*Sup. Ct.* 1878); *Shinn on Replevin, section* 292. Since early times under our statute, *R. S.* 2:73–3, replevin would also lie where the original taking of possession was lawful but the subsequent detention of the property was unlawful or tortious. This provision in the statute brought the common law action of detinue within the ambit of the remedy. The gist of the common law action of detinue was that defendant originally had and acquired possession of the chattels lawfully, as by finding or bailment, but holds them subject to the plaintiff's superior right to immediate possession which has been asserted

by a demand. The essence of the action is the wrongful detention not the wrongful taking. *Shinn on Replevin, section* 292; *McKelvey's Common Law Pleading, sections* 31 and 68.

Under our statute there must be an unlawful detention and in that respect the action of replevin is put on the same footing as an action in trover or detinue. There must be an actual conversion or refusal to deliver on demand which is evidence of conversion, before the detention becomes unlawful. But to constitute such conversion there must be some repudiation by the defendant of the owner's right or some exercise of dominion over the chattels by him inconsistent with such right or some act done which has the effect of destroying or changing the quality of the chattels. *Woodside v. Adams, supra, page* 430.

Where the original possession was lawful there must be a demand for its return, such as we have in this case, before replevin is maintainable. *Veader v. Veader,* 87 *N. J. L.* 140 (*Sup. Ct.* 1915); *Crown Co. v. Reilly,* 88 *N. J. L.* 590 (*Sup. Ct.* 1916).

In short, our statute comprehends both the common law remedies of replevin and detinue. But at the common law where property was unlawfully detained the action in detinue resulted in a judgment for the value of the property and damages in detention. So under our statute where a bond is posted there can be a judgment for the value of the property so that the remedy is the same as it was at common law where the goods were not delivered in a writ of replevin. *Field v. Post,* 38 *N. J. L.* 346, 348 (*Sup. Ct.* 1876).

The appellant's argument that there must be actual possession at the time the writ is issued is based on the theory that the statutory writ of replevin is the same as the common law writ of replevin and this is not so. At the common law there were times when the writ was used where detinue or detinet would lie. It was held that while detinue would not lie against one who never had possession of the chattels it does lie against one who once had but has improp-

erly parted with possession of it. *Shinn on Replevin, section* 41; *Fewster v. Boggett,* 9 *Mees. & W.,* 19. But even the common law rule had some exceptions. While it was generally stated the writ of replevin would not lie if the chattels were not in the possession of the defendant at the time the suit was instituted, there was an exception that the writ would issue where the defendant had voluntarily, unlawfully or in bad faith parted with the property before or after the time the writ issued.

■ The rationale of this rule was that it would enable one who had wrongfully taken or detained property from the owner to refuse to deliver and hold to the last moment before the writ and then evade a suit by a transfer of possession, his successor might do the same and his after him until the cost of the writ to the owner would consume the property. When one has wrongfully detained property and refused it on demand he is liable in an action in replevin even though it may not remain in his possession when the suit is brought. *Andrews v. Hoeslich,* 47 *Wash.* 220, 91 *Pac.* 772 (*Sup. Ct.* 1907) and the cases and law stated in 18 *L. R. A.* (*New Series*) 1265, 1270, 1271.

■ It should also be noted that under our statute, *R. S.* 2:73–13, 15 and 18, where a bond is posted and a claim of property is tried the action in replevin is not an action for the return of specific chattels but for their value and damages for detention, and the case proceeds as if the specific property had not been claimed. *Lembeck & Betz Brewing Co. v. Tarrant,* 79 *N. J. L.* 372 (*Sup. Ct.* 1910).

■ The question whether replevin will lie in this particular set of facts before us could not possibly be disposed of on a motion for summary judgment because this will depend upon the proofs in the case and may present a jury question as to whether or not the conversion and sale of the certificates of stock was a breach of the pledge agreement or was done in bad faith, and the defendant will have the burden of proving the good faith of the transaction and the fact that a demand for additional security was made. As the proofs

develop it may appear that the action actually should be in trover or conversion, because trover and conversion will lie where there is an illegal conversion or an exercise of dominion over the pledgor's property by the pledgee contrary to the terms of the pledge.

Since the statute of limitations, *R. S.* 2:24–1 fixes a six-year period of limitation for actions in trover, replevin and detinue, the statute has not necessarily run in this case and the complaint under our liberal rules of practice is still amendable for that reason and for the further reason that the previous proceeding was dismissed without prejudice on the stipulation of the parties.

In view of the foregoing discussion of the statutory remedy here in question we find it unnecessary to discuss the doctrine of election of remedies or the questions of waiver and estoppel because we are of the opinion they are without application.

As to the question of the jurisdiction of this court to hear this appeal it must necessarily be dismissed on the authority of *Petersen v. Falzarano,* 6 *N. J.* 447 (1951), because it cannot be disputed that the County Court has the power to hear and determine actions in trover and replevin. Jurisdiction does not depend upon the sufficiency of a complaint in a particular case or the technical validity of the manner in which the case is pleaded or the correctness of the decision rendered. In the judicial sense jurisdiction has been defined to be the right to adjudicate concerning the subject matter in a given case, and jurisdiction includes the right to make a wrong decision as well as a right decision. The former may be corrected by appeal but not because of lack of jurisdiction.

The appeal will be dismissed.

HEHER, J., concurring in dismissal.

*For affirmance and dismissal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD and BURLING —5.

*For reversal*—None.