22 A.3d 52

STEPHEN VOELLINGER AND THOMAS KENNEDY, PLAINTIFFS–
APPELLANTS, v. PAULA T. DOW, THE ATTORNEY GENERAL
FOR THE STATE OF NEW JERSEY,[1] DEFENDANT–RESPON-
DENT.

Superior Court of New Jersey
Appellate Division

Argued May 25, 2011—Decided June 22, 2011.

---

[1] The complaint named Anne M. Milgram, the former Attorney General, as the defendant in this action. We have substituted her successor as defendant pursuant to *Rule* 4:34–4.

Before Judges FISHER, SAPP–PETERSON and SIMONELLI.

*Stuart J. Lieberman* argued the cause for appellants (*Lieberman & Blecher,* attorneys; *Mr. Lieberman,* of counsel; Mr. *Lieberman and Mara Epstein,* on the brief).

*Andrew D. Reese,* Deputy Attorney General, argued the cause for respondent (*Paula T. Dow,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Mr. Reese,* on the brief).

The opinion of the court was delivered by

FISHER, J.A.D.

In this appeal, we examine whether or to what extent the Division of Criminal Justice (the Division) may be found liable for losing or destroying evidence properly seized years earlier during a criminal investigation. Although we affirm the dismissal of plaintiffs' action, we reject the trial judge's determination that plaintiffs were limited to a claim of replevin and conclude that the judge should have applied bailment principles, which in these circumstances imposed a gross negligence standard, that the Division did not breach.

Plaintiffs were principals of Aeroplating, Inc., a metal plating business in Woodbury Heights. In 1980, plaintiffs purchased the property and business assets of Electro–Coatings, Inc. (ECI), which had operated a metal plating business on the site since 1969. In September 1985, a Woodbury City sewer worker died after being exposed to fumes traced to Aeroplating's business. As a result and pursuant to a valid search warrant, the Division seized several boxes of records relating to the chemicals used at the Aeroplating facility.

In March 1986, Aeroplating and its manager, John Persic, were charged with second-degree manslaughter; the indictment alleged they discharged 1–1–1 Trichloroethane into the Woodbury City sewer system beyond the limitations of a permit held by Aeroplating and with a conscious disregard of a substantial and justifiable risk for the consequences. Both the defendants pled guilty in 1987 and Aeroplating was ordered to pay a $50,000 fine.

In 1990, Aeroplating ceased operations and filed for bankruptcy protection. The property was sold and plaintiffs were required to remediate the contamination on the property. They commenced an action in April 2004, against ECI, seeking contribution for past, present and future costs associated with cleaning the site pursuant to the Spill Compensation and Control Act, *N.J.S.A.* 58:10–23.11 to –23.50.

Believing the Aeroplating records seized by the Division in 1985 were germane in determining responsibility for contamination of the site, plaintiffs filed a request pursuant to the Open Public Records Act (OPRA), *N.J.S.A.* 47:1A–1 to –13, in August 2007; the request was denied the following month because the Division could not locate the records. As a result, on June 13, 2008, plaintiffs filed this action against the Attorney General, alleging negligence and conversion. Following discovery, plaintiffs moved for partial summary judgment on the issue of liability, and the Attorney General cross-moved for summary judgment.

The judge granted the Attorney General's motion, concluding that plaintiffs' only cause of action was for replevin, which was time-barred due to the passage of time before its assertion. The judge alternatively observed that even if plaintiffs possessed a cause of action sounding in negligence, it was barred by the doctrine of laches. We affirm but for different reasons. *See Isko v. Planning Bd. of Livingston*, 51 *N.J.* 162, 175, 238 *A.*2d 457 (1968); *Grow Co. v. Chokshi*, 403 *N.J.Super.* 443, 467 n. 8, 959 *A.*2d 252 (App.Div.2008).

■ We reject the motion judge's determination that the only cause of action arising from the circumstances is replevin. Indeed, we conclude that the statutory right of replevin, *N.J.S.A.* 2B:50–1, which encompasses the common law torts of both replevin and detinue, *Baron v. Peoples National Bank of Secaucus*, 9 *N.J.* 249, 255–56, 87 *A.*2d 898 (1952),[2] does not lie in these circumstances. *See Eleuteri v. Richman*, 47 *N.J.Super.* 1, 8, 135 *A.*2d 191 (App.Div.1957) (recognizing in dictum that "property held by the State as evidence for use in a criminal trial is not

---

[2] At common law, replevin was an action seeking possession of goods or chattels taken wrongfully or tortiously. *Baron, supra,* 9 *N.J.* at 255, 87 *A.*2d 898; *Woodside v. Adams,* 40 *N.J.L.* 417, 430 (Sup.Ct.1878). On the other hand, detinue applied where the defendant had lawfully acquired possession but wrongfully continued to hold the goods or chattels contrary to the plaintiff's superior right to immediate possession. *Baron, supra,* 9 *N.J.* at 255–56, 87 *A.*2d 898.

subject to replevin or to an action of that purport or effect"), *aff'd*, 26 *N.J.* 506, 141 *A.2d* 46, *cert. denied*, 358 *U.S.* 843, 79 *S.Ct.* 52, 3 *L.Ed.2d* 77 (1958). Here, plaintiffs do not dispute that the Division took possession of the documents pursuant to a valid search warrant; the taking was lawful. Plaintiffs also have not claimed that the Division's retention of the records—at least until 2007, when the first request for their return was made—was unlawful.[3]

Having determined that the statutory cause of action of replevin does not lie in these circumstances, we are required to consider the nature of the parties' relationship in determining whether plaintiffs possessed a viable cause of action that was not time-barred by the significant delay in seeking relief. We start with the premise that the Division lawfully seized and lawfully retained the property throughout the criminal proceedings. Plaintiffs never moved in the context of the criminal case for the suppression of the evidence or its return.[4] *See State v. Howery*, 171 *N.J.Super.* 182, 183, 408 *A.2d* 445 (App.Div.1979).

At some point following the conclusion of the criminal prosecution, the Division's unfettered dominion and right to retain the property ended, and Aeroplating had the right to demand the property's return. The record reveals—and it is not disputed— that the Division's written standard operating procedures called for the Division to notify Aeroplating that the materials were

---

[3] We agree with the trial judge that if replevin did lie that cause of action would be time-barred because it was not filed within six years of its accrual. *O'Keeffe v. Snyder*, 83 *N.J.* 478, 489, 416 *A.2d* 862 (1980).

[4] The record amply demonstrates that the materials in question constituted the property of Aeroplating. Plaintiffs concede this, as demonstrated by their complaint's allegation that in 1985 the Division "raided the offices of Aeroplating ... [and] seized all of the operating files and records *belonging to this business*" (emphasis added). Plaintiffs, who also alleged they were "partners in a company called Aeroplating," have not demonstrated how they—and not Aeroplating or Aeroplating's trustee in bankruptcy—have standing to seek relief regarding the loss of Aeroplating's property. Nevertheless, we assume for present purposes that plaintiffs had standing to pursue whatever cause of action Aeroplating could have asserted regarding the loss of its records.

available for return. These procedures also provided that should "the owner choose not to have the evidence returned, the Division will seek permission from the owner to forfeit the evidence for disposal."

In light of the inordinate passage of time, there is no evidence as to what communications, if any, occurred between the Division and Aeroplating after the conclusion of the criminal matter. And it is not even clear what became of the records. The Division was able to demonstrate that for a while the records were maintained in its vault, then transferred to a storage facility in Quakerbridge, and later, to abandoned sections of the Trenton Psychiatric Hospital, which later suffered various levels of deterioration, including a roof collapse. After the roof collapsed, Division employees retrieved all salvageable materials and transferred them to the sole storage facility now used by the Division. The Division asserted in response to discovery requests in this action that not a trace of Aeroplating's records had been located despite an "exhaustive search." These facts were not disputed.

In defining the nature of the parties' relationship to the property and to each other once the criminal prosecution concluded, we conclude that a bailment was created. When, for example, a sheriff takes possession of property pursuant to writ or court order, a constructive bailment is created and the sheriff becomes liable for his or her negligence in preserving the property. *See Ritter v. Castellini*, 173 *N.J.Super.* 509, 514–15, 414 *A.*2d 614 (Law Div.1980); *Kessman v. City of Denver*, 709 *P.*2d 975, 977 (Colo. App.1985). The imposition of ordinary negligence standards in that circumstance arises from the fact that a sheriff is due compensation for such efforts and thus assumes a position "analogous to that of a bailee for hire." *Ritter, supra*, 173 *N.J.Super.* at 515, 414 *A.*2d 614 (quoting *State v. Clark*, 20 *A.*2d 127, 129 (Del.1941)). That same circumstance is not present here. The Division earned no fee for retaining Aeroplating's property; once it had no further use for this evidence, the Division acted merely as a "gratuitous bailee," liable only upon proof that the property

was lost as a result of "gross negligence." *See* 19 *Williston on Contracts* § 53:8 (4th ed.2001) (recognizing that "[a] bailee who undertakes the care of goods without reward is liable for damage caused only by his or her gross negligence"). Viewing the parties' relationship in this manner, we turn to the nature of the suit's disposition.

■ Summary judgment was granted dismissing plaintiffs' complaint. The standard applicable to both the trial court and this court, *Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.*, 189 *N.J.* 436, 445–46, 916 *A.*2d 440 (2007), requires an examination of the competent evidential materials in the light most favorable to plaintiffs in considering whether "a rational factfinder [could] resolve the alleged disputed issue in favor of the non-moving party," *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). As we have observed, at some point in or about 1987, the criminal prosecution ended and Aeroplating was entitled to the return of its property. Aeroplating, however, did not request its return until 2007. In light of these circumstances, and the absence of any other evidence to suggest the manner in which the property was lost or destroyed, no rational factfinder could conclude the Division was grossly negligent in failing to preserve this property during the decades Aeroplating showed no interest in their return.

Affirmed.