**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5142-14T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DARNELL STEWART,

    Defendant-Appellant.

_____

Submitted October 23, 2017 — Decided December 5, 2017

Before Judges Ostrer and Rose.

On appeal from Superior Court of New Jersey,
Law Division, Camden County, Indictment No.
05-08-3205.

Joseph E. Krakora, Public Defender, attorney
for appellant (Rasheedah R. Terry, Designated
Counsel, on the brief).

Mary Eva Colalillo, Camden County Prosecutor,
attorney for respondent (Kevin J. Hein,
Assistant Prosecutor, of counsel and on the
brief).

PER CURIAM

    Defendant Darnell Stewart appeals from an April 29, 2015

order denying his petition for post-conviction relief ("PCR")

without an evidentiary hearing, and denying his motion for post-conviction DNA testing. We affirm.

Following a jury trial in June 2006, defendant was convicted of first degree kidnapping, first degree aggravated sexual assault, second degree sexual assault, and second degree attempt to commit sexual assault. Defendant was ultimately sentenced to an aggregate sixty-year prison term with a sixty-year period of parole ineligibility.

Defendant's conviction was upheld on direct appeal.[1] State v. Stewart (Stewart I.), No. A-2745-06 (App. Div. April 29, 2009), certif. denied, 200 N.J. 475 (2009). We incorporate by reference the facts and procedural history set forth at length in our prior opinion. Id., slip op. at 2-10.

I.

The following is a summary of the facts relevant to the present appeal.

---

[1] We remanded for resentencing, finding the trial court had improperly imposed two extended terms, contrary to N.J.S.A. 2C:44-5(a)(2). Because defendant previously had been convicted of sexual assault, and was serving a special sentence of parole ineligibility for life at the time he committed the present offense, on remand the trial court imposed extended terms, without a period of parole ineligibility pursuant to N.J.S.A. 2C:43-6.4(b). Defendant did not appeal the revised sentence.

On October 23, 2014, at approximately 7:00 a.m., B.S.[2] was physically attacked and sexually assaulted in Camden. B.S. testified her attacker hit her in the face, grabbed her by the neck, and forced her to an area under a highway underpass. There, defendant ordered B.S. to lower her pants and bend over. Her attacker then rubbed his penis between her buttocks and vagina. Specifically, B.S. "felt his head going into [her] vagina, but not all the way, and that's when [she] made an attempt to run." However, B.S.'s attacker grabbed her, "punched [her] like a punching bag," and forced her back to the overpass area. This second time, her attacker ordered B.S. to bend over, and attempted to enter her, but could not achieve an erection, despite "[r]ubbing against [her] butt again, trying to get it hard." B.S.'s attacker stated he should have killed B.S., then left the area.

B.S. screamed for help but no one responded. She went home and called the police who transported her to the hospital within one hour of the attack. At the hospital, a forensic examination was performed. B.S. suffered multiple contusions to her face, back and chest, including a split eyebrow and split lip. The Sexual Abuse Nurse Examiner ("SANE"), who examined B.S., testified B.S. did not sustain any evidence of injury to her vaginal area.

---

[2] We use initials to protect the victim's privacy.

Secretions from B.S.'s vagina, cervix, "right scapula, right buttocks, [and] right calf," were swabbed and collected as part of the sexual assault examination.

The SANE testified pre-ejaculate serum contains sperm and can be discharged whether or not a man ejaculates. On cross-examination, defense counsel attempted to elicit from the SANE testimony that it is highly unlikely, without ejaculation, fluid would travel to the cervix. However, the SANE responded:

> The penis does not have to be fully entered into the vagina for serum to get in there. So, if someone attempted to insert the penis into the vagina, some pre-ejaculate fluid or ejaculate could be deposited at the end of the vagina and could migrate upwards towards the cervix.

Forensic testing of DNA evidence contained in B.S.'s sexual assault kit matched defendant's DNA. At trial a State Police chemist, qualified as an expert in biological stain analysis, testified that B.S.'s sexual assault kit contained vaginal, anal, oral, and external genital specimens, head and pubic hair combings, fingernail specimens, buccal controls swabs, debris and dried secretions. She tested the vaginal and cervical samples but did not test all of the specimens because she felt the samples she had examined were sufficient "to generate a DNA profile." On cross-examination, trial counsel elicited testimony that B.S.'s cervical specimen contained more than an average quantity of sperm.

Six months after the assault, B.S. identified defendant from a photo array. She was sixty-percent certain defendant was her attacker. B.S. identified defendant in court and testified she had never seen him before the day of the attack. Defendant called an investigating police officer and defense investigator to establish inconsistencies between B.S.'s testimony and her prior statements.

Defendant did not testify at trial. At the pretrial Sands/Brunson hearing,[3] the State indicated it would seek to impeach defendant's credibility, if he elected to testify, by adducing testimony about his multiple prior convictions, including a second degree offense.[4]

During a pretrial Wade hearing,[5] trial counsel first suggested B.S. and defendant had engaged in sexual intercourse on an unspecified "earlier date." Over trial counsel's objection, the trial court ruled admissibility of defendant's alleged prior

---

[3] State v. Sands, 76 N.J. 127, 141 (1978); State v. Brunson, 132 N.J. 377 (1993).

[4] Because defendant's prior second degree conviction was for sexual assault, the trial court "sanitized" all of his prior convictions. Brunson, supra, 132 N.J. at 391. As such, the court limited the State's line of questioning, had defendant testified, to "the date of the conviction, the sentence imposed, and the degree of the crime without mentioning the title of the conviction."

[5] United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967).

sexual relations with B.S. was governed by the Rape Shield Law. N.J.S.A. 2C:14-7. Notwithstanding lack of notice, the court afforded defendant the opportunity for a hearing, pursuant to the statute, but trial counsel responded that his client did not intend to testify, nor produce any evidence as to this issue. Rather, trial counsel intended to cross-examine the victim and argue his theory to the jury. In response to the court's inquiry as to when the alleged sexual activity occurred, trial counsel responded, "Judge, I don't know. I'm waiting for the victim to testify."

Because defendant would not avail himself of the procedures required by the Rape Shield Law, the court ruled trial counsel would be limited to arguing "it would be impossible for the crime to have been committed because [defendant] did [not] have an erection or he didn't ejaculate or did [not] leave any genetic material without going . . . to the next step and saying they had sex on some prior occasion." Nevertheless, during summation, without objection by the State or interference from the court, defense counsel implied defendant and B.S. had sex on a prior occasion, that is, defendant "obviously and fully penetrated [B.S.] and left his semen. But it was not under the circumstances she described."

In January 2010, defendant filed a pro se PCR petition alleging his trial counsel was ineffective for, among other things,

failing to investigate alibi witnesses and failing to conduct an effective cross-examination of the State's witnesses. PCR counsel subsequently was appointed to represent defendant ("first PCR counsel").

In September 2010, defendant sent correspondence to his first PCR counsel which essentially incorporated a "supplemental letter brief" to file on his behalf. Defendant claimed, without certifying or providing details, that B.S. was a prostitute, and a second DNA test would support his consensual sexual intercourse "theory."

In November 2010, first PCR counsel filed an amended petition, alleging appellate counsel was ineffective for, among other things, "not raising denial of DNA testing on his direct appeal." However, first PCR counsel did not file defendant's proposed supplemental letter brief in any form.

On November 17, 2010, defendant sent a twenty-five-page document to first PCR counsel, certifying the information therein was "truthful to the best of his knowledge." Defendant asserted, for the first time, he engaged in consensual sex with the victim three days prior to the incident. He also claimed the victim was a prostitute and that he paid her half of her fee in cash and half with drugs in exchange for sex.

In May 2011, the first PCR judge denied relief, essentially determining defendant's petition was unsupported by competent evidence. As to defendant's claim that his appellate counsel was ineffective for failing to raise "the denial of DNA testing," the PCR judge found, "[t]he simple flaw in this argument is that there was DNA testing in this case. And the results, which linked defendant to the victim through sexual penetration, were never disputed." Defendant appealed the first PCR court's decision.

Having found defendant's first PCR counsel failed to advance his pro se arguments, we reversed and remanded for a new hearing with new PCR counsel. State v. Stewart (Stewart II.), No. A-2210-11 (App. Div. June 10, 2014).

In June 2014, new PCR counsel was assigned to represent defendant ("second PCR counsel"). In July 2014, a forensic DNA consultant hired by second PCR counsel, determined certain specimens collected from the victim's body were never tested. Those specimens were "anal swabs . . . external genital swabs . . . [and] dried secretions collected from the exterior of the victim's body" ("additional specimens").

In February 2015, defendant filed a pro se motion to compel the State to produce specimen evidence for post-conviction DNA testing. In March 2015, present PCR counsel filed a brief in support of defendant's motion and PCR petition.

8

In a comprehensive oral opinion rendered on April 29, 2015, following oral argument, Judge Frederick J. Schuck denied defendant's motion and PCR petition.

Applying the well-established two-pronged Strickland-Fritz[6] standard, Judge Schuck recognized

> the defendant must allege facts sufficient to demonstrate counsel's alleged substandard performance supported by affidavits or certifications based on the personal knowledge of the affiant. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).
>
> With respect to this [requirement], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance or that the challenged action might be considered sound trial strategy. State v. Harris, 181 N.J. 391, 431 (2004) (quoting Strickland, supra, 466 U.S. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694-95.

---

[6] Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984); State v. Fritz, 105 N.J. 42, 58 (1987). In order to establish a case of ineffective assistance of counsel, defendant must demonstrate a reasonable likelihood of success under the two-pronged Strickland-Fritz test. A defendant must show: (1) that counsel was deficient or made egregious errors, so serious that counsel was not functioning effectively as guaranteed by the Sixth Amendment of the United States Constitution; and (2) the deficient performance actually prejudiced the accused's defense. Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693; see also Fritz, supra, 105 N.J. at 52.

A-5142-14T4

Considering this standard, the PCR judge rejected defendant's argument trial counsel was ineffective for failing to secure testing of the additional specimens. In so doing, the judge "indulge[d] the strong presumption that the decision not to seek DNA testing falls within the wide range of reasonable professional assistance or might be considered sound trial strategy."

As to the first Strickland-Fritz prong, the PCR judge found trial counsel utilized the DNA evidence to defendant's advantage by claiming the attacker could not achieve an erection, penetrate B.S., or ejaculate inside her. Among other reasons, the court found testing the additional specimens could have been harmful to defendant's case if defendant's DNA matched that contained in the additional specimens.

As to the second Strickland-Fritz prong, the PCR judge found defendant did not demonstrate prejudice because DNA testing of the additional specimens would not have impacted the weight of the evidence, that is, B.S.'s positive in-court and out-of-court identifications of defendant, and her testimony that she had never seen defendant prior to the day of the assault.

Recognizing trial counsel was unable to make "a sufficiently specific proffer to warrant admissibility of a prior sexual act," the PCR judge likewise rejected defendant's argument trial counsel was ineffective for failing to pursue a hearing pursuant to the

Rape Shield Law. Judge Schuck observed defendant's specific contention B.S. was a prostitute with whom he had consensual sex three days prior to the assault, did not appear in the record until defendant's November 17, 2010 correspondence to his first PCR counsel. Citing trial counsel's response to the court when the rape shield issue was discussed during the <u>Wade</u> hearing, the PCR court found it apparent that trial counsel was unaware of defendant's newly-minted "bald assertion."

Judge Schuck found defendant's remaining claims lacked merit, including defendant's contention trial counsel failed to speak with two purported alibi witnesses, George Bucks and Dawn Stewart.[7] Citing <u>State v. Petrozelli</u>, 351 <u>N.J. Super.</u> 14, 23 (App. Div. 2002), the judge observed defendant failed to support this claim by an affidavit or certification of his witnesses. Moreover, the court noted Dawn Stewart's pretrial statement to law enforcement indicating she could not vouch definitively that defendant was at her house the day of the assault.

Turning to defendant's motion for post-conviction DNA testing pursuant to <u>N.J.S.A.</u> 2A:84A-32a, Judge Schuck carefully analyzed the statute's requirements and the case law interpreting the

---

[7] On appeal, defendant argues trial counsel failed to present "his alibi witnesses, including his aunt, Dawn Stewart;" defendant does not reference George Bucks.

statute, concluding defendant's failure to satisfy two of the eight requirements set forth in <u>N.J.S.A.</u> 2A:84A-32a(d)(1) - (8). Specifically, defendant failed to demonstrate the additional specimens were material to the issue of his identity pursuant to <u>N.J.S.A.</u> 2A:84A-32a(d)(4). Nor could defendant show that if the results were favorable, a motion for a new trial based upon newly-discovered evidence would be granted pursuant to <u>N.J.S.A.</u> 2A:84A-32a(d)(5).

Judge Schuck's rationale was similar to that supporting his denial of defendant's PCR ineffective assistance of counsel claims. Citing <u>State v. Relden</u>, 373 <u>N.J. Super.</u> 396, 407 (App. Div. 2004), <u>certif. denied</u>, 182 <u>N.J.</u> 628 (2005), the judge found favorable results would not obviate the facts that: defendant's DNA was found inside B.S.'s vagina and cervix; B.S. positively identified defendant; he could not prevail at a rape shield hearing; and his defense that he had sex with B.S. on a prior occasion was belated.

This appeal followed.

On appeal, defendant raises the following points for our consideration:

> POINT I
>
> THE LOWER COURT'S ORDER THAT DENIED DEFENDANT'S MOTION FOR POST-CONVICTION DNA

12

TESTING MUST BE REVERSED BECAUSE [ ] DEFENDANT MET ALL THE REQUIREMENTS SET FORTH IN N.J.S.A. 2A:84-32A(d) INCLUDING SUBSECTIONS (d)(4) AND (d)(5)

A. [ ]Defendant Satisfied N.J.S.A. 2A:84A-32a(d)(4) Because the Presence of Another Man's DNA on the Victim's Body Immediately After the Assault Would Certainly Create a Material Dispute as to the Identity of the Perpetrator

B. [ ]Defendant Satisfied N.J.S.A. 2A:84A-32a(d)(5) Because There is a Reasonable Probability That Favorable DNA Test Results Would Entitle Him to a New Trial Based Upon Newly[-]Discovered Evidence

POINT II

THE PCR COURT'S ORDER THAT DENIED DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF MUST BE REVERSED BECAUSE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN THE PROCEEDINGS BELOW

A. Trial Counsel's Failure to File a Meritorious Rape Shield Motion Constituted Ineffective Assistance of Counsel

B. Trial Counsel's Failure to Obtain a DNA Expert to Perform DNA Analysis on the Untested Evidence Constituted Ineffective Assistan[c]e of Counsel

C. Trial Counsel's Failure to Present Defendant's Alibi Witnesses Constituted Ineffective Assistance of Counsel

D. Trial Counsel's Failure to Investigate the Facts and Research the Law Constitute[d] Ineffective Assistance of Counsel

A-5142-14T4

POINT III

THIS COURT SHOULD REMAND THE MATTER FOR AN
EVIDENTIARY HEARING

II.

We first address defendant's PCR petition. The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999). Rather, trial courts should grant evidentiary hearings and make a determination on the merits only if the defendant has presented a prima facie claim of ineffective assistance, material issues of disputed facts lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). We review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion. State v. Preciose, 129 N.J. 451, 462 (1992). We review any legal conclusions of the trial court de novo. State v. Nash, 212 N.J. 518, 540-41 (2013); State v. Harris, 181 N.J. 391, 419 (2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005).

"[I]n order to establish a prima facie claim, [the defendant] must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient

to demonstrate counsel's alleged substandard performance." Cummings, supra, 321 N.J. Super. at 170. Under the first prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. Under the second prong, the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid. That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.

We have considered defendant's PCR contentions in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons Judge Schuck expressed in his well-reasoned oral opinion. We add the following remarks.

Trial counsel's decision to forego DNA testing of the additional specimens was consistent with his well-executed trial strategy. That strategy was to insulate his client from testifying in light of defendant's lengthy criminal record. Although the

15                                                    A-5142-14T4

nature of defendant's convictions was sanitized, had defendant testified, the prosecutor undoubtedly would have attempted to impeach his credibility by referencing his convictions for a second degree offense, and multiple third and fourth degree offenses. See N.J.R.E. 609. Without defendant's testimony, there was no other way for him to introduce evidence of his purported prior consensual sexual intercourse with the victim, and that her attacker must have been a third party.

In light of the defense strategy, DNA testing of the additional specimens was not a no-risk or clearly advantageous option. Defense attorneys are required to provide the results of such tests to the State. Rule 3:13-3(b)(2)(A). Had one or more of the additional specimens matched defendant's DNA, counsel could not have argued, as he did, that defendant was not the attacker because the attacker's sperm did not reach B.S.'s cervix. Because defendant's DNA was found on B.S.'s cervical and vaginal specimens, defendant's DNA potentially could have been found in B.S.'s "anal swabs . . . external genital swabs . . . [and] dried secretions collected from the exterior of the victim's body." Without testing the additional specimens, counsel was able to argue to the jury B.S. and defendant likely had sex on a prior occasion.

Viewed in context, there is no support for a finding of anything other than a reasonable strategic decision to forego DNA

testing of the additional specimens.  Even strategic choices made after limited investigation are generally afforded great deference and are assessed for reasonableness.  Petrozelli, supra, 351 N.J. Super. at 22.  Trial strategy is clearly within the presumptive discretion of competent trial counsel.  State v. Coruzzi, 189 N.J. Super. 273, 321 (App. Div.), certif. denied, 94 N.J. 531 (1983).  Thus, defendant's PCR claim based on trial counsel's failure to hire a DNA expert and request DNA testing was properly denied.

Moreover, the record is completely devoid of any evidence defendant informed trial counsel that B.S. supposedly was a prostitute whom he paid with money and drugs in exchange for sexual intercourse three days prior to the assault.  Indeed, the first mention of his purported defense is partially referenced in the September 2010 letter to first PCR counsel, more than four years after trial, and six years after a crime defendant claims he did not commit.  When a defendant asserts his attorney has inadequately represented him, "he must assert the facts that an investigation would have revealed, supported by [an] affidavit[] or certification[] based upon [his] personal knowledge."  Porter, supra, 216 N.J. at 353 (citing Cummings, supra, 321 N.J. Super. at 170).  Here, defendant has done no more than "make bald assertions that he was denied the effective assistance of counsel."  Cummings, supra, 321 N.J. Super. at 170.

A-5142-14T4

The record also supports Judge Schuck's findings on defendant's other claims. Accordingly, we are satisfied from our review of the record that defendant failed to make a prima facie showing of ineffectiveness of trial counsel under the <u>Strickland/Fritz</u> test. We, therefore, discern no abuse of discretion in the denial of defendant's PCR petition. The judge correctly concluded an evidentiary hearing was not warranted. <u>See</u> <u>Preciose</u>, <u>supra</u>, 129 <u>N.J.</u> at 462-63.

### III.

Turning to defendant's motion for post-conviction DNA evidence, we concur with Judge Schuck's denial of such testing. Indeed, one of the key factors in determining the motion is number five, that is, whether there is a "reasonable probability" that a motion for a new trial would be granted if the DNA results proved to be favorable to the defendant. <u>N.J.S.A.</u> 2A:84A-32a(d)(5).

Moreover, it is well-settled that to obtain a new trial based on newly-discovered evidence, the defendant must establish the new "evidence is (1) material, and not 'merely' cumulative, impeaching, or contradictory; (2) . . . <u>was discovered after completion of the trial and 'was not discoverable by reasonable diligence beforehand'</u>;" and (3) could "probably change the jury's verdict if a new trial [was] granted." <u>State v. Ways</u>, 180 <u>N.J.</u>

18

171, 187 (2004) (emphasis added) (quoting State v. Carter, 85 N.J. 300, 314 (1981)).

However, because we are satisfied trial counsel's decision in not testing the additional specimens was sound and strategic, and not ineffective, we conclude the additional specimens are not new evidence. Indeed, the additional specimens were known at the time of trial; counsel chose not to test them for the reasons set forth above.

Simply put, even if the results of the additional specimens could be construed as favorable to defendant, the specimens are not new evidence and, as such, defendant would not be entitled to a new trial. We, therefore, affirm on that basis. We are entitled to affirm orders or judgments for reasons other than those expressed by a trial court. See Isko v. Planning Bd. of Livingston, 51 N.J. 162, 175 (1968); Voellinger v. Dow, 420 N.J. Super. 480, 483 (App. Div.), certif. denied, 208 N.J. 599 (2011).

"It is [the] defendant's burden to establish that all of the elements necessary for DNA testing have been fulfilled." State v. Armour, 446 N.J. Super. 295, 311 (App. Div.), certif. denied, 228 N.J. 239 (2016). Defendant failed to establish the untested specimens are newly-discovered evidence because they were known at trial. That failure is fatal to his request for DNA testing. N.J.S.A. 2A:84A-32a.

19

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20